BUCKLEY *v.* DRISCOLL.

1. PLEADING—PROOF—AMENDMENT OF BILL OF PARTICULARS WITH-
IN DISCRETION OF COURT.

In an action for work and labor, where plaintiff's bill of
particulars was for $5 per day, and· testimony produced
at the trial tended to show that during the time he was
so engaged common laborers were paid as high as from
90 cents to $1.10 per hour, refusal of permission to· amend
the bill of particulars to $1 per hour, after plaintiff rested
his case, was within the discretion of the court.

2. WORK AND LABOR—EVIDENCE—QUESTION FOR JURY.

In an action of assumpsit for work and labor while in
defendant's employ from April 2, 1918, to December 6th
following, where, in addition to the positive testimony of
a contractor that plaintiff worked during all the time wit-
ness was there, testimony was also given showing that
plaintiff worked both before and after the contractor was
on the job, the trial court was in error in limiting plain-
tiff's recovery to the time testified to by the contractor,
and directing a verdict therefor; plaintiff being entitled
to have the issues of employment, time, and wages sub-
mitted to the jury under proper instructions.

Error to Wayne; North (Walter H.), J., presiding.
Submitted April 4, 1923. (Docket No. 27.) Decided
April 27, 1923.

Assumpsit by James P. Buckley against the estate
of Helen Driscoll, deceased, for work and labor. Judg-
ment for plaintiff on a directed verdict for less than
amount claimed. He brings error. Reversed.

· *James H. Pound,* for appellant.

*Kronner & McGraw* and *Dennis B. Hayes,* for ap-
pellee.

STEERE, J.  This is an action in assumpsit brought by plaintiff to recover of defendant wages for work and labor while in her employ from April 2, 1918, to December 6th of the same year.  The action was begun in December, 1920, and personal service had upon defendant.  She appeared and demanded a copy of the declaration.  Plaintiff filed a bill of particulars and on July 13, 1921, defendant filed a plea of general issue.  Before the case was brought to trial defendant died.  Her death was thereafter suggested to the court and duly entered of record with an order that her administrator with will annexed be admitted to defend the action.  Upon the trial plaintiff was confronted with an objection against his testifying to matters equally within the knowledge of the deceased defendant, which was sustained by the court.  This limited his proofs to the testimony of third parties who saw him working or going to work for defendant during that summer, and the value of the kind of work he did for her.  Plaintiff claimed and the testimony tended to show that he was employed by defendant during that season as a "handy man," doing various kinds of work as she directed around her home on Cadillac avenue, and at a house belonging to her on McClellan avenue which she was repairing and remodeling.  In that undertaking she let a contract for doing the so-called "new work" to a carpenter contractor named Limberg who testified that he began his contract the last of June and finished the last of September, 1918, working there daily with his men; that he only did the new work, for which she was to and did prepare the building by tearing down and removing the old material as the remodeling required; that plaintiff did the most of such labor under her directions, working there steadily every day during the time Limberg was carrying on his contract work; that when he first went up there to see defendant about

making the contract plaintiff was on the premises tearing out and down some additions, old buildings and sheds, and after he finished his contract in September he saw plaintiff yet working there at different times when he went over to see defendant about getting his pay, as to which there was some delay.

Plaintiff's bill of particulars was for work and labor as a handy man, at $5 per day from April 2d to December 6, 1918, inclusive, concluding, "or 213 days' work at $5 per day, amounting to the sum— including interest at five per cent. from January 1, 1919, to date, of $1,065, principal and interest and payments." Testimony produced by him as to the value of such service tended to show that during the time he was so engaged common laborers were paid as high as from 90 cents to $1.10 per hour, owing to the great scarcity of labor resulting from war conditions.

When plaintiff rested his counsel moved the court for permission to amend his bill of particulars to $1 per hour. This was objected to by counsel for the defense on the ground of surprise and the objection sustained, on which ruling plaintiff assigns error. Under the circumstances shown the ruling was clearly within the discretion of the court. Defendant offered no testimony but moved for a directed verdict, which was denied.

After some discussion between court and counsel the court announced that there was evidence plaintiff had worked for decedent three months which at the rate of 26 days per month would be 78 days, amounting at $5 per day to $390, that Limberg's testimony was the only evidence in the record as to definite time and "any other would be mere speculation." To this defendant's counsel assented, while plaintiff's counsel protested and claimed the issues involved were for the jury. The court then directed a verdict in favor of

plaintiff for $390 with costs. Omission of interest was evidently an oversight which, as defendant's counsel suggest, might be corrected without a new trial, but the case is essentially one of facts upon which plaintiff was entitled to take the verdict of the jury. In positively limiting the time of plaintiff's service to the three months while Limberg was performing his contract the court rejected all testimony as to his services before and after that time. Limberg himself testified he saw plaintiff working for deceased before he had made his contract with her to do the new work on the house he remodeled and also after he finished, at different times during several weeks. Other witnesses testified to seeing him working for her at other places.

The parties to this action were cousins. Plaintiff was a laboring man well along in years but yet active and able to work. He lived with another cousin named Mrs. Healey who kept boarders. Defendant was a married woman in apparently better circumstances, who owned several houses in Detroit. Mrs. Healey occasionally visited defendant at her home and testified that the latter had requested her to send plaintiff there to work for her, saying she would pay her (Mrs. Healey) for his board and plaintiff for his work; that she was overhauling and remodeling her house on McClellan avenue and wanted him to do some work there. Mrs. Healey said she did not see him working at the McClellan avenue house, but he left mornings to go to work and came back in the evening, often quite late. She did, however, see him working for deceased at her own house, moving lumber, helping to build a garage and doing other work while he was boarding with her, and during that time defendant had told her of plaintiff's working there, that he was going before the painters and burning old paint from the building, picking up the stuff, looking after

the men, putting things away for safety evenings, etc.

Mrs. Sophie Strudley testified in part:

"I live 100 feet from deceased's house. She was remodeling. From my side window is 105 feet to the side of her house. * * * I saw Mr. Buckley there, and I seen him burning off the paint with a torch, day in and day out; scraping also. I also saw Buckley picking up around the place. Always evenings. Doing odd jobs. I seen him going back and forth. Mrs. Kelly would be with him sometimes. They would have their premises filled. She seemed to be giving directions, Mrs. Kelly did. I remember the contractor, Limberg, being there. I don't know the date Limberg and Buckley began. It was early in the spring that I noticed these gentlemen. But I noticed Mr. Buckley there the first of the two. * * * I think they were tearing out something, sheds, or something in the rear. * * *

"Q. And what is the fact about how early this man Buckley started to work in the morning. The ordinary time?

"A. Well, not real early. Usually it was about 8 or 9. Something like that. Not early.

"Q. Not as early as 7 o'clock?

"A. Oh, yes. But he would work late till dark. He was there until we could not see. That was as far as I could say. He was working there faithfully, as long as he was working. Steadily to dark all the time, from his beginning to work."

In directing a verdict for the amount stated against the protest of plaintiff's counsel the court invaded the province of the jury. Plaintiff was entitled to have the issues of employment, time and wages submitted to the jury under proper instructions.

The judgment is reversed, with costs, and a new trial granted.

FELLOWS, MCDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred. WIEST, C. J., did not sit.